**AFFIDAVIT OF SPECIAL AGENT ROBERT J. BOSKEN,
U.S. DEPARTMENT OF VETERANS AFFAIRS,
OFFICE OF INSPECTOR GENERAL,
IN SUPPORT OF A COMPLAINT**

I, Robert J. Bosken, being duly sworn, depose and state as follows:

I. **INTRODUCTION**

1. I am a Special Agent with the U.S. Department of Veterans Affairs (hereinafter "VA"), Office of Inspector General (hereinafter "OIG"), and have been so employed since 2010. Prior to joining the VA OIG, I was employed as a Special Agent with the U.S. Postal Service, Office of Inspector General for approximately six years. During my law enforcement career, I have received extensive law enforcement training, including training on investigations of the distribution of controlled substances. My training has included completing the Federal Law Enforcement Training Center's Criminal Investigator Training Program, the U.S. Drug Enforcement Administration's Basic Narcotics School, and the New England State Police Information Network's Pharmaceutical Diversion Training.

2. In addition to my training, I have had experience in the investigation of the illegal distribution of controlled substances. I have participated in numerous drug investigations as a case agent and in a subsidiary role.

With exposure to drug related cases, I have become familiar with the appearance, packaging, and distribution methods and techniques used to illegally distribute numerous controlled substances. I have debriefed defendants, informants, and witnesses who had personal knowledge about drug activities.

3.  This affidavit is submitted in support of a criminal complaint charging **David DEJESUS, DOB 2/10/1960, of 19 Fernald Street, Lowell, Massachusetts**, with distributing and dispensing heroin, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4.  This affidavit is based on my own personal involvement in this investigation, my training and experience, and my discussions with other law enforcement officers involved in this investigation. In submitting this affidavit, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause to charge David DEJESUS with the offense of distributing and dispensing heroin, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2

## II. INVESTIGATION

5. In July 2011, agents from the VA OIG, working in conjunction with agents from the Drug Enforcement Administration (hereinafter "DEA") and the VA Police Service, began investigating the illegal distribution of controlled substances at the Veterans Affairs Medical Center in Bedford, Massachusetts (hereinafter "VAMC"). The VAMC provides multiple services to veterans of the U.S. Armed Forces, including alcohol and drug abuse/addiction rehabilitation services.

6. In August 2011, a VA OIG cooperating witness (hereinafter "CW") identified David DEJESUS (hereinafter "DEJESUS") as a source of supply for heroin at the VAMC.[1] According to CW, DEJESUS was a veteran who was enrolled as a patient at the VAMC.[2] CW supplied DEJESUS'S cellular telephone number as 978-606-4152.[3]

---

[1] Heroin is a schedule I controlled substance.
[2] According to VAMC records, DEJESUS was enrolled as a patient at the VAMC. Agents identified DEJESUS through a VAMC identification photograph
[3] Sprint records show that cellular telephone number 978-606-4152 was subscribed to Stevie Jhonson, PO Box 54966, Irvine, CA 92619.

3

August 15, 2011 CW Purchase of Heroin from DEJESUS for $37[4]

7. On August 15, 2011, CW reported to VA OIG agents that earlier in the day, CW had spoken with DEJESUS in person and that DEJESUS agreed to sell heroin to CW later that day.[5] Later that day, under the direction and observation of agents, CW met DEJESUS and an unknown female at the VAMC. CW purchased from DEJESUS a plastic bag containing a brown powder for $37 U.S. Currency. CW reported that DEJESUS offered to sell CW additional heroin on the following day. The substance purchased that day was sent to a DEA laboratory and determined to contain heroin.

August 17, 2011 CW Purchase of Heroin from DEJESUS for $80

8. On August 17, 2011, while in the presence of law enforcement, CW called DEJESUS'S cellular telephone to arrange the purchase of a gram of heroin from DEJESUS. After the call ended, CW reported to law enforcement that DEJESUS agreed to sell CW a gram of heroin for $80 U.S. Currency. Later that day, under the direction and observation of agents, CW met with DEJESUS and the same unknown female in a parking lot abutting the VAMC. CW purchased from DEJESUS a plastic bag containing a brown

---

[4] Unless otherwise noted, all meetings were observed by agents. In addition, some meetings were partially recorded with video and photographs. Government funds were used to purchase the drugs, with the serial numbers being recorded. Before and after each transaction, the CW and CW's vehicle were searched and found to have no contraband or money.

[5] This meeting was neither observed nor recorded by agents.

4

powder for $80 U.S. Currency. Portions of this meeting were captured by law enforcement in photographs and on video. After the meeting with DEJESUS, CW reported to law enforcement that CW handed DEJESUS $80 U.S. Currency, and DEJESUS handed CW heroin. The substance purchased that day was sent to a DEA laboratory and determined to contain heroin.

December 1, 2011 CW Purchase of Heroin from DEJESUS for $80

9. On November 30, 2011, while in the presence and at the direction of law enforcement, CW made a series of recorded calls to DEJESUS'S cellular telephone to arrange the purchase of a gram of heroin from DEJESUS. CW reported to law enforcement that DEJESUS agreed to sell CW a gram of heroin for $75 to $80 U.S. Currency on the following day.

10. After the final call ended, agents reviewed the audio recordings of the November 30, 2011 calls between DEJESUS and CW. During the first call, CW can be heard saying, "can you do anything…something small?" DEJESUS replied, "like a G?"[6] During the second call, CW can be heard saying, "How much Dave?" DEJESUS replied, "Um, probably seventy-five or eighty."

11. On December 1, 2011, under the direction and observation of agents, CW met with DEJESUS and an unknown

---

[6] Based upon my training and experience, I believe that DEJESUS'S use of the term "G" referred to a gram quantity of heroin.

male at the VAMC.[7] During that meeting, CW purchased from DEJESUS a plastic bag containing a brown powder for $80 U.S. Currency. After the meeting with DEJESUS, CW reported to law enforcement that CW handed DEJESUS $80 U.S. Currency, and DEJESUS handed CW the suspected heroin. The substance purchased that day tested positive in a field test for the presence of heroin. The substance was sent to a DEA laboratory and is pending analysis.

12. Agents reviewed the audio recording of the December 1, 2011 meeting between DEJESUS and CW. CW can be heard asking, "What are you paranoid?" DEJESUS replied, "yeah man, I don't like doing stuff around here."

### III. **PROBABLE CAUSE**

13. Based on the foregoing, and based on my training and experience, I submit that there is probable cause to believe that, on or about August 15, 2011, August 17, 2011, and December 1, 2011, **David DEJESUS** committed violations of federal law, including distributing heroin, a schedule I controlled substance, in violation of Title 21, United States Code 841(a)(1).

---

[7] CW was equipped with a recording device during CW's December 1, 2011 meeting with DEJESUS.

_____
Robert J. Bosken
Special Agent
VA Office of Inspector General


Sworn and subscribed to before
me this 31st day Of January, 2012.

_____
JUDITH G. DEIN
United States District Magistrate Judge
District of Massachusetts